<hr />

### DAVEY et al. v. CUTTER et al.

(District Court, D. New Jersey. June 17, 1912.)

PATENTS (§ 328*) — VALIDITY AND INFRINGEMENT — PROCESS OF TREATING WOUNDS IN TREES.

The Davey patent, No. 890,968, for a process of treating and dressing a bruise or wound in the trunk or live branch of a live tree, an essential feature of which is a watershed groove on the top and sides of the cavity made in the tree to prevent the entrance of water back of the cement used in filling such cavity, discloses invention and is valid; also *held* infringed.

In Equity. Suit by John Davey, Martin L. Davey, James A. Davey, and Wellington E. Davey against Frederick A. Cutter and George Carl Freeman, copartners as Cutter & Freeman, for infringement of letters patent No. 890,968, for a process of treating and dressing a bruise or wound in the trunk or live branch of a live tree, granted June 16, 1908, to John, Martin L., and James A. Davey. On final hearing. Decree for complainants.

Bakewell & Byrnes, for complainants.
Francis C. Lowthrop, for defendants.

RELLSTAB, District Judge. The patentees, and Wellington E. Davey, to whom a one-fourth interest in the patent was assigned, are the complainants. The defendants were former employés of the complainants. During such employment they became familiar with such process, and the evidence convinces that subsequently, in the treatment of trees, they used several of the steps of such process, including the recess or watershed groove hereinafter particularly referred to. If this step involves invention, the infringement is clear.

The patentees in their application for the patent state:

"This invention relates to an improved process of treating and dressing a bruise or wound or any decayed or unsound spot in the trunk or live branch of a live tree.

<hr />

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

"The primary object of this invention is to remove all decayed and unsound wood and foreign matter from the wounded or unsound portion of the trunk or branch, and so dress the cavity formed by removing the decayed or unsound wood and foreign matter that the wound will be readily healable by nature, and further decay or harm to the tree prevented.

"With this object in view, and to the end of realizing other advantages hereinafter appearing, our improved process consists in the steps hereinafter described and pointed out in the claims. * * *

"The first step of our improved process consists in forming the cavity *a* large enough and removing all decayed or unsound wood and foreign matter from the diseased or unsound portion of the trunk or branch by the formation of the said cavity. The bottom of the cavity is cut away at the outer end of the cavity so as to slope downwardly and outwardly, as at *10*. (See Figs. 2, 4 and 5.) Each side wall of the cavity is provided at the outer end of the cavity with a recess *12* which extends upwardly from the downwardly and outwardly sloping portion *10* of the bottom of the cavity at a point below the upper end of the said sloping portion to the top wall of the cavity and there connects with the adjacent end of a recess *13* formed at the outer end of the cavity in and transversely of the said top wall. Obviously the recesses *12* and *13* form a channel which extends upwardly from the sloping portion *10* of the bottom at one side of the cavity to the top of the cavity, thence across the top of the cavity and downwardly at the opposite side of the cavity to the said sloping portion of the bottom, and the channel thus provided constitutes a lateral and upward enlargement of the cavity at the outer end of the cavity. It will be observed therefore, that the cavity formed by the removal of the decayed or unsound wood and foreign matter from the trunk or branch is enlarged laterally in opposite directions and upwardly, and that the lateral enlargements *12* of the cavity terminate at their lower ends at the sloping portion *10* of the bottom of the cavity a suitable distance below the upper end of the said sloping portion of the bottom, as shown very clearly in Figs. 4 and 5."

The last five claims only cover the recess or watershed step, and, as the other two claims were withdrawn from the court's consideration in this suit, these claims only will be considered.

This step, as disclosed and claimed, is as follows (using the terms of the third claim):

"Recessing the side walls and top wall of the cavity at the outer end of the cavity to form a channel extending from the bottom of the cavity at one side of the cavity to the top wall of the cavity, thence across the said top wall to the other side of the cavity, and thence downwardly to the bottom of the cavity."

No prior patents or publications were set up on this watershed step, and the evidence failed to establish its prior use; and it stands in this case as new. Is it inventively new? The problem in this art before the advent of the complainants' patent was to prevent the entrance of water into the cavity after it was filled with cementitious material. This had never been effectively solved. The main difficulty (adopting the language of the complainants' brief)—

"present in cement or concrete fillings was and is to keep moisture out of the filled cavity. Being exposed to rain, snow, fogs, etc., it was found practically impossible in most cases to prevent the moisture from seeping into the cavity between the wood and the filling, and thus setting up a condition which was worse than if no filling had been applied—worse, because darkness aided the fungus, while the filling tended to hold in the water and made the surfaces inaccessible for treatment. This difficulty of keeping out moisture was greatly increased by reason of the slight shrinkage of the cement filling in hardening. The record shows that this shrinkage, while slight, always takes place

in the hardening of the cement filling. This naturally leaves a slight space between the filling and the wood, and rain running down the trunk or limb will enter this space, thus setting up ideal conditions for decay."

The watershed groove was intended to prevent such entrance of water, etc., the patentees in that behalf declaring in their said application for patent:

"The object of enlarging the cavity laterally in opposite directions and upwardly at the outer end of the cavity is to prevent any rain, water or moisture which may have found access into the outer end of the cavity externally of the cementitious filling through any possible imperfections in the joint between the filling K and the water-proof coating C or in the said coating, from passing inwardly beyond the said enlargements of the cavity, and any water or moisture obtaining ingress into the said enlargements of the cavity from any cause and gravitating adown the said enlargements on to the sloping portion 10 of the bottom of the cavity will gravitate adown the said sloping portion of the bottom to the exterior of the trunk or branch of the tree."

The testimony establishes that this step accomplished the object sought, and that it was promptly recognized and adopted by foresters and others in the business of caring for trees, as an effective means of trapping and shedding the water before it reached the cavity. This watershed groove is not a mere duplication or extension of the idea of means disclosed in the enlargement of the cavity. Such enlargement is only for the purpose of removing the decayed wood and to hold in the filler. It could not prevent the trickling or seeping in of water at the outer edge of the cavity. The cutting of the groove is not to remove the decayed wood, and, though it aids in holding intact the filler, that is but incidental. Its purpose, as already stated, is to trap and shed the water ere it reaches the cavity, and is a decided advance on the art.

The defendants' counsel during the taking of testimony and on the final hearing conceded that defendants were estopped from denying the utility of this watershed groove. Its commercial success was large and was not due more to the energy in soliciting trade than to its merits. There is nothing in the case that overcomes the presumption of validity that goes with the grant of the letters patent.

The complainants are entitled to the usual decree for injunction and account as to the last five claims of the patent.